**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MICHAEL F. DUFFY, et al.,                :        CIVIL ACTION
                                         :
        Plaintiffs,                      :        NO.  05-5428
                                         :
    v.                                   :
                                         :
SODEXHO, INC.,                           :        **FILED**
                                         :
        Defendant.                       :        NOV 14 2008

MICHAEL ___ ___ ___ Clerk
By_____Dep. Clerk

**MEMORANDUM**

BUCKWALTER, S. J.                                    November 14, 2008

        Before the Court is Defendant Sodexho, Inc.'s Motion for Summary Judgment

(Docket No. 21), the Response of Plaintiffs Michael F. Duffy, Richard Simpson and Diane

Anderson ("Plaintiffs") (Docket No. 27), Defendant's Sur-Reply (Docket No. 29), as well as

Plaintiffs' Motion to Substitute Party (Docket No. 33).  On October 29, 2008, a hearing was held

on Defendant's Motion for Summary Judgment.  For the reasons stated below, Defendant's

Motion for Summary Judgment is granted, and Plaintiffs' Motion to Substitute Party is granted.

**I.  PROCEDURAL BACKGROUND**

        On October 17, 2005, Plaintiffs filed a Complaint individually and on behalf of all

persons similarly situated, against Defendant, Sodexho, Inc., alleging that Defendant

discriminated against the named Plaintiffs and class plaintiffs on account of their age in violation

of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.*, and the

Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONS. STAT. §955, *et seq.*

Plaintiffs allege that Defendant failed to consider them and other management level employees for open positions for which they were fully qualified; Defendant failed to promote and retain Plaintiffs and other older management level employees while promoting and retaining younger, less qualified employees; and Defendant maintained a pattern and practice of age discrimination.  (Compl. 1.)

On January 18, 2006, Plaintiffs moved, pursuant to Federal Rule of Civil Procedure 23(c), Local Rule of Civil Procedure 23.1(c), and Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), as incorporated by Section 7 of the ADEA, 29 U.S.C. §626(b), for provisional class certification and court-supervised notice to potential opt-in plaintiffs. (Docket No. 4.)[1]  This Court denied Plaintiffs' Motion for Class Certification on October 23, 2006, and the Third Circuit denied Plaintiffs' Petition for Permission to Appeal on December 18, 2006.

On April 30, 2008, Defendant filed a Motion for Summary Judgment.  Plaintiffs responded to Defendant's Motion on June 16, 2006, and Defendant replied to this response on July 16, 2008.

## II.  FACTUAL BACKGROUND:

### A.    General Factual Background

Defendant provides food services to a variety of institutional customers.  (Def's Ex. II.A Bridger Dep. ("Bridger Dep.") 39:1-9, 40:1-13, Apr. 5, 2006; Def.'s Ex.I.A Bridger Decl. ("Bridger Decl.") ¶ 1.)  At the time in question, Defendant had five different divisions:

---

1. Plaintiffs provided no argument or support for class certification pursuant to Federal Rule of Civil Procedure 23(c) or Local Rule of Civil Procedure 23.1(c), but rather have limited the arguments in their pleadings to class certification based on Section 16(b) of the FLSA, 29 U.S.C. §216(b).

Corporate Services, Healthcare Services, Senior Services, Campus Services, and School Services. (Bridger Decl. ¶ 1.)  Given their differences, divisions "often require or prefer that a candidate have previous experience working in that division." (Bridger Dep. 131:15-19; Def.'s Ex.I.A Wilson Decl. ("Wilson Decl.") ¶ 15; Def.'s Ex.I.A Tomlins Decl. ("Tomlins Decl.") ¶ 10; Def.'s Ex.I.A Brewer Decl. ("Brewer Decl.") ¶ 12; Def.'s Ex.I.A Weick Decl. ("Weick Decl.") ¶ 11.)

  Defendant utilizes a web-based system, called Career Center, to list open positions and record actions taken with regard to filling a position.  (Bridger Dep. 128:13-136.) Managers use the system to post and fill job vacancies, but recruiters initially screen and identify the applicants.  (Id. at 134:13-17, 142:8-16.)  Career Center requires an applicant to answer a battery of preliminary questions, and post their resume.  (Id. at 135; Def.'s Ex. I.B Kenst Dep. ("Kenst. Dep.") 59:19-22.)  Career Center automatically rejects candidates who do not meet certain threshold criteria.  (Kenst. Dep. 59:19-22.)  The recruiter winnows the list of applicants by conducting telephone interviews to learn more about applicant's qualifications, salary requirements, and interest in the position. (Ex.II.A; Wilson Dep. ("Wilson Dep.") 12:1-8; Kenst Dep. 26:1-10, 92:8-18; Def.'s Ex.I.B Kenst Decl. ("Kenst Decl.") ¶ 16; Def.'s Ex.I.B. Laycock Dec. ("Laycock Decl.") ¶ 5.)

  A list of applicants is then forwarded to the hiring manager who selects the best qualified candidate.  (Id. at 161:5-10; 164:1-6, 168:2-7.)  Career Center automatically notifies non-selected candidates when a position has been filled.  (Def.'s Ex.I.A Ivy Decl. ("Ivy Decl.") ¶ 8.)  If a position is cancelled, Career Center automatically notifies all active applicants.  (Id. at ¶ 7.)

Career Center does not reveal age information to anyone involved in the personnel selection process. All the recruiters who reviewed Plaintiffs' applications stated that they did not know their ages. (Kenst Dep. 100:6,7; Def.'s Ex.II.B Myers Dep. ("Myers Dep.") 56:3-11, 58:14-20, Feb. 26, 2008; Def.'s Ex.II.B Fontecchio Dep. ("Fontecchio Dep.") 56:17-23, Mar. 6, 2008; Def.'s Ex.II.B Allen Dep. ("Allen Dep.") 26:8-18, Feb. 20, 2008; Def.'s Ex.II.A Schmeck Dep. ("Schmeck Dep.") 51:17-20, Feb. 13, 2008; Wilson Dep. 52:24-53:1-8; Laycock Dep.47:7-9; Def.'s Ex. II.A Pianko Dep. ("Pianko Dep.") 32:1-3; Feb. 12, 2008; Def.'s Ex.II.B Tirpak Dep. ("Tirpak Dep.") 66:1-21, Feb. 26, 2008.) All hiring managers deposed by Plaintiffs stated that they did not know Plaintiffs' ages, and every manager involved in a selection decision has declared that they did not know Plaintiffs' ages. (Def.'s Ex.II.B Buttermore Dep. ("Buttermore Dep.") 40:8-24, Feb. 26, 2008; Def.'s Ex.II.B Hand Dep. ("Hand Dep.") 46:20-22, Feb. 19, 2008; Def.'s Ex.II.B Miller-Eveland Dep. ("Miller-Eveland Dep.") 40:16-18, Feb. 19, 2008; Def.'s Ex.II.B Sherman Dep. ("Sherman Dep.") 47:12-14, Feb. 13, 2008; Wilson Dep. 52:24-53:1-8; Def.'s Ex.I.B Bergman Decl. ("Bergman Decl.") ¶¶ 10, 14; Def.'s Ex. I.A Connor Decl. ("Connor Decl.") ¶¶ 9, 15; Def.'s Ex.I.A Geren Decl. ("Geren Decl.") ¶¶ 10, 17, 25; Def.'s Ex.I.A Hines Decl. ("Hines Decl.") ¶ 12; Def.'s Ex.I.A. Judice Decl. ("Judice Decl.") ¶ 11; Def.'s Ex.I.B Kenna Decl. ¶ 6; Def.'s Ex.I.A del Fierro Decl. ("del Fierro Decl.") ¶ 9; Def.'s Ex.I.B Sadawski Decl. ("Sadawski Decl.") ¶¶ 8, 12.) Recruiters and managers employed by Defendant regularly received Equal Employment Opportunity training. (Bridger Dep. 162:5-9; Wilson Dep. 53:17-19; Def.'s Ex.II.B Allen Dep. ("Allen Dep.") 12:7-10, Feb. 20, 2008; Def.'s Ex.II.B Fontecchio Dep. ("Fontecchio Dep.") 16:19-17:1-10, Mar. 6, 2008; Def.'s Ex.II.B Myers Dep. ("Myers Dep.") 10:17-12:19, Feb. 26, 2008; Def.'s Ex.II.B Tirpak Dep. ("Tirpak Dep.")

4

12:1-24, Feb. 26, 2008; Def.'s Ex.II.A Schmeck Dep. ("Schmeck Dep.") 14:13-15:4, Feb. 13,

2008; Laycock Dep. 47:10-18.)

**B.     Specific Factual Background Regarding Plaintiffs**

Plaintiffs have a combined sixty-seven years of experience with Defendant or its

corporate predecessor, Marriott Management Systems, Inc.[2]  (Pls.' Resp. Br., Ex. C Duffy Dep.

("Duffy Dep.") 104:6-107:24, Mar. 27, 2008; Pls.' Resp. Br., Ex. E Anderson Dep. ("Anderson

Dep.") 116:19-23, Mar. 24, 2008; Pls.' Resp. Br., Ex. G Simpson Dep. ("Simpson Dep.") 87:8-

88:8, Mar. 28, 2006.)  Plaintiffs lost their permanent positions when Defendant's contract at the

Wyeth Corporation's Radnor facility was cancelled.  (Duffy Dep. 160:14-162:13.)

Defendant told all managers at the Radnor facility that they should apply for other

positions within the corporation.  (Id.)  By October 20, 2002, Plaintiffs began applying for

permanent, full-time positions within Defendant corporation.  (Pls.' Resp. Br. 13.)

Plaintiffs applied for a total of fifty-seven positions, but were not hired for any of

them.[3]  (Id.; Duffy Dep. 36:21-24, 87:1-18, 88:19-23, 168-169:24.)  Plaintiffs claim that they

were not selected by Defendant due to their age.  (Compl. 1; see also Pls.' Resp. Br. 43.)

Supporting this claim, Plaintiffs raise two pieces of circumstantial evidence.  First, they refer to a

July 2002 issue of "Best of" magazine provided to shareholders of Defendant's parent

corporation:  Sodexho Alliance.  (Id. at 10.)  The July 2002 issue of "Best of" outlined six goals

for Sodexho Alliance, the second of which recommended improving "management planning and

---

2.  In 1988, Defendant acquired Marriott Management Services, Inc., which had employed Plaintiffs.

3.  Richard Simpson applied for twenty-five positions, Michael Duffy applied for twenty-one positions, and Diane
Anderson applied for eleven positions.  (Pls.' Resp. Br. 14, 25, and 22.)

succession by revitalizing our management teams with younger individuals almost always promoted from within." (Id.) Second, Plaintiffs assert that younger managers, who also worked at Wyeth's Radnor facility, were given preferential treatment. (Pls.' Resp. Br. 45-46; Duffy Dep. 52:4-24, 188:7-190:6.) Specifically, three younger managers, Ms. Mancini, Mr. Robinson and Ms. D'Ignazio, obtained permanent positions without having to apply via Career Center as is Defendant's customary policy. (Id. see Def.'s Reply Br., Ex. D.)

Of these fifty-seven positions, only thirteen[4] are under consideration, as the parties agree that forty-four claims involve either: (1) positions that were cancelled or never filled,[5] (2) positions where Plaintiffs do not contest Defendant's hiring decision,[6] or (3) untimely claims filed outside the statute of limitations.[7] (Id.) Of the timely claims, Duffy raises four, Simpson five, and Anderson five.

### 1.   Mr. Michael Duffy

When the Radnor facility closed on October 20, 2003, Plaintiff Duffy had not obtained a permanent position within Defendant corporation, despite having applied for twenty-one positions. (Pls.' Resp. Br. 5.) Instead, Defendant assigned Duffy to a variety of temporary positions until his termination in May 2004.

---

4.  Duffy's positions: 37816, 21448, 29870, and 42474. Simpson's positions: 11612, 20863, 30395, 30315, and 31899. Anderson's positions: 52375, 36878, 47116, 48015, and 49634.

5.  Positions 47658, 33231, 32015, 32013, 50495, 34992, 26452, 32016, 32014, 32062, 30410, 22705, 19322, 6663, 8354, 7350, and 3260.

6.  Positions 10071, 14555, 12817, 18621, 21296, 22768, 21450, 27454, 17482, 27113, and 31592.

7.  Positions 8858, 12122, 11540, 11465, 15443, 10576, 18063, 19089, 21932, 22137, 16351, 12563, 13932, 18141, and 2794.

Duffy began working for Marriott Management Services, Inc. in 1988. (Pls.' Resp. Br. 8.) After Defendant acquired Marriott Management Services, Duffy worked only in its Corporate Services Division. (Duffy Dep. 112:22-24.). Duffy had no experience with the school lunch program, never worked in a unionized facility, and never held a Training Manager position. (Id. at 153:1-154:11.) In 1997, Duffy was transferred to the Radnor facility where he served as a manager. (Pls.' Resp. Br. 8.) His duties included managing the cafeteria in the 555 building, as well as the kiosks in other buildings. (Id.) In 2000, Duffy received food safety training, and taught safety training to employee's in four districts and organized the activities of eight district safety coordinators. (Id. at 9.) His last job title was Manager 3 Grade 6 – the highest grade he obtained. (Duffy Dep. 146:5-7.) On August 13, 2004, Duffy requested that the Equal Employment Opportunity Commission ("EEOC") file a charge of discrimination against Defendant. (Pls.' Resp. Br. 37; Duffy Dep. 23:21-26:6.)

Duffy alleges claims regarding positions 21448, 29870, 42474, and 37816.

## 2. **Ms. Diane Anderson**

Plaintiff Anderson started working for Marriott in 1979, and entered management in 1983. (Pls.' Resp. Br. 9; Anderson Dep. 97-102;11.) She began working on the Wyeth account in 1985, at the Wyeth cafeteria in Great Valley, Pennsylvania. (Pls.' Resp. Br. 9; Anderson Dep. 123:2-10.)

When the Radnor facility closed, Anderson transferred back to Wyeth's Great Valley facility. (Anderson Dep. 127:10-13.) In February 2004, the Great Valley contract was cancelled. (Id. at 144-147.) At that time, Anderson began working for Defendant in a temporary capacity. Anderson erroneously received a separation check from Defendant, and on the next

7

business day, August 16, 2004, told her supervisor that she would cease employment that day. (Id. at 155:4-156:10.)

Anderson applied, but was not selected for eleven positions within Defendant's corporation. (Id. at 156.) On September 10, 2004, Anderson requested that the EEOC file a charge of discrimination against Defendant. (Pls.' Resp. Br. 37; Anderson Dep. 28-32:22)

She alleges claims of discrimination regarding positions 52375, 36878, 47116, 48105, and 49634.

### 3.   Mr. Richard Simpson

Plaintiff Simpson graduated from the Culinary Institute of America and started working for Marriott in a management training position in 1978. (Pls.' Resp. Br. Ex. G Simpson Dep. ("Simpson Dep.") 87:9-112, Mar. 28, 2008.) Simpson worked as an assistant manager, manager, and general manager in the Corporate Services division. (Pls.' Resp. Br. 12.) In 2000, Simpson was transferred to Wyeth's Radnor facility. (Simpson Dep. 103:13-104:19.)

In 2001, Simpson was assigned to a management position at Wyeth's 555 Building. (Id. at 105:23-106:18, 119:8-10.) When the Radnor facility closed, Simpson had not obtained a permanent job, and worked in temporary positions until April 2004, when he ceased working for Defendant. (Simpson Dep. 131:1-11.). Simpson unsuccessfully applied for twenty-five positions. (Pls.' Resp. Br. 26.) On September 10, 2004, Simpson requested that the EEOC file a charge of discrimination against Defendant. (Simpson Dep. 36:10-37:10.)

Simpson alleges discrimination regarding positions 30395, 30315, 31899, and 20863.

## III.  STANDARD OF REVIEW FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). For there to be a "genuine" issue, a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. (Id.)

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. County of Allegheny, PA, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993.)  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar

materials negating the opponent's claim." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." (<u>Id.</u> at 325.) Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Elec.</u>, 475 U.S. at 586. "There must be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted. <u>Arbruster v. Unisys Corp.</u>, 32 F.3d 768, 777 (3d Cir. 1994), <u>abrogated on other grounds</u>, <u>Showalter v. University of Pittsburgh Med. Center</u>, 190 F.3d 231 (3d Cir. 1999).

## IV.  DISCUSSION

The ADEA prohibits an employer from discharging an employee "because of [his] age." 29 U.S.C. § 623(a)(1) (2002). To prevail on a claim brought under the ADEA or PHRA,[8] "a plaintiff must show that his or her age actually motivated and had a determinative influence on the employer's decision to fire him or her." <u>Fakete v. Aetna, Inc.</u>, 308 F.3d 335, 337 (3d Cir. 2002) (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 141 (2000)) (internal quotations omitted). Liability depends on "whether the protected trait actually motivated the employer's decision." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 141 (2000).

This Circuit has noted that Title VII discrimination claims may be raised under the mixed-motive theory set forth in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), or the

---

8.  The legal standard used for an ADEA claim also applies to any claim brought under the Pennsylvania Human Relations Act ("PHRA"). <u>See</u> <u>Kautz v. Met-Pro Corp.</u>, 412 F.3d 463, 466 n.1 (3d Cir. 2005).

pretext theory set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. (1973).  <u>See</u> <u>Makky v.</u>

<u>Chertoff</u>, Civ. A. No. 07-3271, 2008 WL 3091785, at *7 (3d Cir. Aug. 7, 2008).

 The bulk of Plaintiffs' allegations allege pretext and are thus examined under the

<u>McDonnell Douglas</u> standard; however, Plaintiffs also claim, in the alternative, that they have

provided sufficient circumstantial evidence to permit a mixed motive claim.  After discussing the

appropriate standards, this Court will apply them to the underlying facts.

 **A.** ***McDonnell Douglas* Claims**

  **1.** **Elements**

 If a plaintiff cannot present direct evidence of an ADEA violation, discrimination

may be established using circumstantial evidence by means of the burden shifting "pretext"

method established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>see also</u>

<u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002) (<u>McDonnell Douglas'</u> burden shifting

approach  does not apply when there is direct evidence of discrimination.).[9]

 In order to state a claim of discrimination, the <u>McDonnell Douglas</u> approach

requires that a plaintiff "allege that (1) he is over forty, (2) he is qualified for the position in

question, (3) he suffered from an adverse employment decision, and (4) his replacement was

sufficiently younger to permit a reasonable inference of age discrimination."  <u>Hill v. Borough of</u>

---

9.  Originally intended, to address racial discrimination in violation of Title VII, a variation of the <u>McDonnell Douglas</u> criteria has been applied to claims brought under the ADEA.  <u>See</u> <u>Smith v. City of Jackson, Miss.</u> 544 U.S. 228, 252 (2005) (citing <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 517 U.S. 308, 311 (1996) (Assuming that Title VII's <u>McDonnell Douglas</u> burden-shifting framework applies to ADEA cases and that, there must be at least a logical connection between each element of a *prima facie* case and illegal discrimination.); <u>Scully v. Allegheny Ludlum Corp.</u>, 257 Fed. Appx. 535 (3d Cir. 2007) (applying <u>McDonnell-Douglas</u> test to Plaintiff's ADEA claim).

Kutztown, 455 F.3d 225, 247 (3rd Cir. 2006) (citing Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004)).  The Supreme Court has held that a *prima facie* case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." Teamsters v. U.S., 431 U.S. 324, 358 (1977).

Once the *prima facie* case is established, defendant bears the burden of production, and must articulate some legitimate, nondiscriminatory reason for the adverse employment action.  McDonnell Douglas, 411 U.S. at 802.  If the defendant does so, plaintiff must prove that the defendant's purported reason is mere pretext, and that discrimination is the real reason.  Id. at 804-05.  To do this, Plaintiff must provide evidence casting "sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or allows the factfinder to infer that discrimination was more likely than not a motivating or determinative" basis for the adverse employment action.  Fuentes v. Perskie, 32 F.3d 759, 759 (3d Cir. 1994).  See also Atkinson v. Lafayette Coll., 460 F.3d 447, 454 (3d Cir. 2006) ("If the [employer advances a legitimate, non-discriminatory reason for its action,] the burden shifts back to [Plaintiffs] to prove that the nondiscriminatory explanation is merely a pretext for discrimination."); Frost v. PetSmart, Inc., Civ. A. No. 05-6759, 2007 WL 602990, at *3 (E.D. Pa. Feb. 26, 2007) (If the defendant satisfies the burden of production, the burden shifts back to the plaintiff to show the employer's stated reasons were pretext for discrimination.)

> To discredit the employer's articulated reasons, plaintiff
>
> need not "produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, nor produce additional evidence

> beyond [her] *prima facie* case." Id. (citations omitted). The plaintiff must,
> however, point to "weaknesses, implausibilities, inconsistencies, incoherencies, or
> contradictions in the employer's proffered legitimate reasons [such] that a
> reasonable factfinder could rationally find them unworthy of credence and hence
> infer that the proffered nondiscriminatory reason did not actually motivate the
> employer's action."

Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644 (3d Cir. 1998) (quoting

Fuentes, 32 F.3d at 764. To show that discrimination was more likely than not a cause for the

employer's action, "the plaintiff must point to evidence with sufficient probative force that a

factfinder could conclude by a preponderance of the evidence that" the plaintiff's age "was a

motivating or determinative factor in the employment decision." Id. Plaintiff may show that the

employer: (1) has previously discriminated against her; (2) has discriminated against other

persons within the plaintiff's protected class or within another protected class; or (3) that the

employer has treated more favorably similarly situated persons not within the protected class. Id.

at 645.

The Third Circuit has reaffirmed the propositions that "the plaintiff must

demonstrate that *each* of the employers *(sic)* proffered nondiscriminatory reasons are pretextual,"

and that a district court may grant summary judgment in favor of the employer notwithstanding

the plaintiff's ability to cast doubt upon some, but not all, of the proffered reasons. Kautz v.

Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005) (citing Fuentes, F.3d at 764) (emphasis in

original). The Kautz court also reiterated the caveat that a plaintiff can demonstrate pretext "by

showing that some of the employer's proffered reasons are a pretext in such a way that the

employer's credibility is seriously undermined, therefore throwing all the proffered reasons into

doubt." Id. (citing Fuentes, 32 F.3d at 764 n. 7).

13

Under this "pretext" method, the burden of proof lies at all times with the plaintiff.

2.    **Application of Law to Plaintiff's Complaints**

    a.    **Plaintiff Duffy's Timely Complaints Fail to State a *Prima Facie* Case or Offer Evidence of Pretext**

        i.    **Position 37816**

Regarding position 37816, Duffy fails to state, much less establish, a *prima facie* case of discrimination.  Duffy applied for this position after a list of viable candidates had been provided to the hiring manager.  (Pls.' Resp. Br. 21; Kenst Decl. ¶ 5.)  Plaintiffs admit this, but note that prior to this position being posted, Duffy worked at the same facility as the hiring manager, Janet Miller-Eveland, who did not inform him of this job.  (Pl's. Resp. Br. 21; Kenst Decl. ¶¶ 7, 8.)  Plaintiffs do not assert that Ms. Miller-Eveland did anything wrong.  In fact, Ms. Miller-Eveland was following the standard hiring protocol.  (Pls.' Resp. 4-6 (describing the selection process of Defendant's hiring decisions.); Def.'s Reply Br. Ex. D (outlining Defendant's hiring process.).)

Duffy was not considered for position 37816 because he failed to timely apply. As a result, Defendant did not have any chance to examine his application.  Thus, as to position 37816, Plaintiffs have failed to state a *prima facie* case of age discrimination.

        ii.    **Position 42474**

Duffy posted for position 42474 on July 21, 2004, and even though Career Center indicates that he was not considered for the position, Duffy was contacted by the hiring manager who asked him to schedule an interview.  (Pls.' Resp. Br. 21-22; Duffy Dep. 74:16-75:21.)

14

Duffy returned the hiring manager's call, but never heard back from her. (Id.) Defendant asserts that Duffy was not the most qualified candidate, as the selected candidate had both superior culinary skills and experience working in a school setting. (Kenna Decl. ¶ 5.)

Plaintiffs have failed to make a *prima facie* case of age discrimination. In fact, Plaintiffs have failed to articulate facts showing that the fourth prong of the McDonnell Douglas approach – that he was replaced by a significantly younger person – has been met . Even assuming, *arguendo*, that Plaintiff had stated a *prima facie* case, Defendant has met its burden and provided a legitimate non-discriminatory reason for hiring Andrew Chandler for position 42474. Defendant states that Mr. Chandler has culinary and school services qualifications that Duffy did not possess. (Buttermore Dep. 43:9-22; Kenna Decl. ¶ 5.) Plaintiffs failed to respond to, much less show, that the reasons proffered by Defendant for selecting Mr. Chandler were pretextual or that discrimination was more likely than not the actual reason for the hiring decision.

### iii.   Position 21448

Duffy posted for position 21448 on October 20, 2003, and learned of his non-selection on November 26, 2003. (Pls.' Resp. Br. 17; Ivy Decl. ¶ 38). Duffy was not telephone screened, even though the recruiter indicated that there is no reason why Duffy would not have been considered. (Pls.' Resp. Br. 17; Duffy Dep. 229:17-233:15.)

Plaintiffs do not dispute Defendant's assertion that the selected candidate had "extensive manager experience on a similarly sized account and had won numerous awards for his performance on that account." (Pls.' Resp. Br. 18 (quoting Def. Mot. for Sum. J. 20.))

15

Instead, Plaintiffs compare Duffy to the selected candidate noting that Duffy had (1) fourteen years more corporate experience than Mr. O'Brien, and (2) experience managing an account valued at over $2 million. (Pls.' Resp. Br. 18-19; Duffy Dep. 230:3-7, 233:18-24, 238:3-13.)

In response, Defendant has provided several legitimate non-discriminatory reasons for selecting O'Brien. O'Brien had as many years of corporate experience, as did Duffy, but fourteen of those years were with Aramark, a competitor. (Def.'s Reply Br. 18.) O'Brien also had managed an account valued at over $2 million. (Id.) In contrast, Duffy lacked the necessary managerial skills or experience that the client desired, as the client specifically stated that "they would not accept a manager who would require on the job training." ( Sherman Decl. ¶ 7.) Supporting this claim is the fact that position 21448 was a manager three, grade seven position – a lateral move for O'Brien, but a promotion for Duffy. (Def.'s Mot. Sum. J. 12; Duffy Dep. 146:2-7.)

Moreover, the hiring manager for position 21448 observed Duffy's work, concluding that he "simply had not demonstrated either the managerial skills or the initiative needed" for the position. (Sherman Decl. ¶ 8.) By way of comparison, O'Brien received a "very strong recommendation" from his prior manager. (Id. at ¶¶ 5, 7, 8.)

Plaintiffs do not assert that Duffy's age played any role in the selection of O'Brien. Again, Plaintiffs have failed to prove under the fourth prong of the McDonnell Douglas approach, – that he was replaced by a significantly younger person. Assuming that Plaintiffs have stated a *prima facie* case of age discrimination, Plaintiffs have not shown that Defendant's stated reasons for hiring O'Brien were pretextual. Plaintiffs simply assert that Duffy is more

qualified than O'Brien, but self-assessment of one's abilities is not sufficient to show pretext. See Dunleavy v. Mount Olive Twp., 183 Fed. Appx. 157, 159 (3d Cir. 2006) (Plaintiff failed to show pretext when he relied on his own argument that he was qualified.); Embrico v. U.S. Steel Corp., 404 F. Supp. 2d 802, 826 (E.D. Pa 2005) (Plaintiff's assessment of his ability is not reasonable to an examination of pretext.). Plaintiffs' have failed to provide any evidence that Defendant's stated reasons for hiring O'Brien were untrue or that discrimination was more likely than not the actual reason for the hiring decision.

### iv.    Position 29870

Duffy posted for position 29870 on January 23, 2004, and was informed of his non-selection on February 2, 2004. (Pls.' Resp. Br. 20; Duffy Dep. 143:19-144;12, 151:21-152:22.) This position required someone who could provide safety training. Although Duffy was certified to provide such training, he had never officially acted as a trainer. (Duffy Dep. 151:21-152:22.) Duffy was not given a phone interview. (Pls.' Resp. Br. 20; Duffy Dep. 143:19-144;12, 151:21-152:22.) Defendant asserts that Duffy was not the most qualified candidate. (Myers Dep. 42:1-9, 42:1-8). The individual selected for this position was fifty-one years old, (Def.'s Mot. for Sum. J. Ex.II.B. Personnel File ("Personnel File")), Duffy was fifty-four years old at the time. (Def.'s Rep. Br. 15; Duffy Dep. 254:3-16.) When told of the selected applicant's age, Duffy was asked if it was "age discrimination if she got the position in your place," to which he replied "not at all." (Duffy Dep. 254:14-16.)

In O'Connor v. Consol. Coin Caterers Corp., Justice Scalia, speaking for the U.S. Supreme Court, opined that "because the ADEA prohibits discrimination on the basis of age and

not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." 517 U.S. 308, 313 (1996). In order to satisfy the "substantially younger" standard, the Third Circuit has noted that a plaintiff alleging discrimination may point to an age difference between himself and his replacement "such that a fact-finder can reasonably conclude that the employment decision was made on the basis of age." Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995) (citing Maxfield v. Sinclair Int'l, 766 F. 2d 788, 792 (3d Cir.), cert. denied, 474 U.S. 1057 (1985)). There is no "particular age difference that must be shown," but while "[d]ifferent courts have held . . . that a five year difference can be sufficient, . . . a one year difference cannot." Sempier, 45 F.3d at 729 (3d Cir. 1995) (citations omitted). In Sempier, the Third Circuit noted that the district court examined a four year age difference between plaintiff and his replacement, but the Third Circuit's examination did not end there given that another individual, "well over 10 years younger" than the plaintiff had assumed some of the plaintiff's duties. Id. at 729-30. The Court found that the combined differences in age was "clearly sufficient to satisfy the fourth prong of a *prima facie* case by raising an inference of age discrimination." Id. at 730.

    In Jehling v. Mellon Bank, the court held that a six year age difference was not sufficiently younger for purposes of sustaining a *prima facie* case of discrimination, noting that while the Third Circuit has not "established a bright line rule regarding the age difference that will satisfy the 'sufficiently younger' element, it has found that absent other evidence, an age difference of as much as seven years is not sufficient to support an inference of discrimination." 2006 WL 1508963 at *6, Civ. A. No. 05-1174 (W.D. Pa., May 31, 2006); see Narin v. Lower

18

Merion Sch. Dist., 206 F.3d 323, 333 n.9 (3d Cir. 2000) (56 year old failed to set forth a *prima facie* case where employer hired a 54 year old and a 49 year old instead of her because those ages did not "differ materially" from hers); see also Gutknecht v. SmithKline Beecham Clinical Labs., Inc., 950 F. Supp. 667, 672 (E.D. Pa. 1996) ("Although no uniform rule exists, it is generally accepted that when the difference in age between the fired employee and his or her replacement is fewer than five or six years, the replacement is not considered sufficiently younger, and thus no *prima facie* case is made").

In this case, Duffy was passed over by another member of the same protected class, who was three years his junior. Based on Sempier and its progeny, three years is not a sufficiently sizeable age difference to support a *prima facie* case of discrimination. Accordingly, the fourth prong of the McDonnell Douglas test has not been met, and Plaintiffs have failed to state a *prima facie* case of discrimination.

Assuming *arguendo* that Plaintiff had stated a *prima facie* case, Defendant has met its burden and provided a legitimate non-discriminatory reason for hiring Ms. Borgese for position 29870. Defendant states that she had training experience necessary for the position that Duffy lacked. (Myers Dep. 38:14-42:8; Ivy Decl. ¶ 30.) Plaintiffs failed to respond to, much less show, that the reasons proffered by Defendant for selecting Ms. Borgese were pretextual or that discrimination was more likely than not the actual reason for the hiring decision. Plaintiffs' have failed to provide any evidence that Defendant's stated reasons for hiring Ms. Borgese were untrue or that discrimination was more likely than not the actual reason for the hiring decision.

b.   **Plaintiff Anderson's Timely Complaints Fail to State a *Prima Facie* Case**

19

Plaintiff Anderson applied for five positions that were not cancelled:  positions 52375, 36878, 47116, 48015, and 49639.  Plaintiff has failed to state a *prima facie* claim of discrimination for any of them.

i.       **Positions 52375 and 36878**

Defendant states that Anderson was not considered for positions 52375 and 36878 as she did not have the required education.  Both positions required "Technical, Trade or Vocational Degree or 2 years Management of Functional Experience."  (Pls.' Resp. Br. 22, 25.)  Anderson did not have a high school diploma or GED, but possessed the equivalent functional experience.  (Anderson Dep. 95:18-24, 123-25.)  Yet, Career Center did not allow applicants to list their functional experience, and automatically screened out those who did not have the required level of formal education.  As a result, Career Center "provided no way" for Anderson "to be considered."  (Myers Dep. 61:24-62:21.)

The parties agree that Anderson was automatically rejected from the applicant pool for these positions due to a failure of Career Center, namely that it did not recognize the experiential equivalent to the required educational level.  As a result, Anderson was never considered for positions 52375 and 36878.  Anderson may have been dismissed by an error in Career Center, but an error in computer software, that affects all applicants similarly, cannot suffice as a basis for discrimination.  "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  Fuentes, 32 F. 3d at 764-65; see Foxworth

v. Penn. State Police, 402 F. Supp. 2d 523, 534 (E.D. Pa. 2005) (automatic disqualification does not show pretext unless it is shown that all others with similar backgrounds were not subject to automatic disqualification.)  Anderson has not shown that she was treated differently than other similarly situated applicant who lacked formal education but possessed the functional equivalent.

Plaintiffs fail to allege, much less prove, that age played any role in the decision to remove Ms. Anderson from consideration.  Mere assertion does not stand as a substitute for fact. As Plaintiffs have failed to provide any evidence that Defendant's stated reasons for not hiring Anderson were untrue or that discrimination was more likely than not the actual reason for the hiring decision, the Court grants summary judgment on this claim.

### ii.  **Positions 47116, 48105, and 49639**

Regarding positions 47116, 48015, and 49639, Plaintiffs have failed to provide any evidence that age played any role in the decision not to hire Anderson.  Ms. Saylor and Ms. Hall, recruiters that claim to have conducted phone interviews with Anderson, both wrote in Career Center that Anderson was not considered because the positions paid less than Anderson's self-reported salary requirement. (Pls.' Resp. Br. 23-25.)  Career Center notes indicated that Anderson's minimum salary requirement was $49,000. (Id. at 25; Ivy Decl. ¶¶ 19, 20, 21.) Position 47116 posted at a salary level was $32-38,000, position 48015 posted a salary range of $34-47,000, and position 49634 posted a salary range of $35-40,000. (Ivy Decl. ¶¶ 19, 20, 21.)

Anderson denies speaking with either recruiter and stated that she "would consider a position with a salary range of between $30,00 and $35,000." (Pls.' Resp. Br. 25; Anderson Dep. 180:13-183:16.)  Yet, Anderson admitted that she erred in entering her salary

21

requirements, and as a result "that salary range was knocking me out" of consideration. (Anderson Dep. 181:13-8); see Bilotti v. Franklin Mint, Civ. A. No. 80-2917, 1981 WL 338, *5 (E.D. Pa. Nov. 21, 1981) (plaintiff may not establish as *prima facie* case of discrimination because he required a higher salary than the one offered.).

Anderson may have been dismissed by either her own error in filling out her Career Center application, an error either by the Career Center software, or by the recruiters using Career Center. The first error, namely of her own making, would clearly rebut any claim of discrimination. The second error, if it was the result of a computer software problem that affects all applicants similarly, cannot suffice as a basis for an age discrimination claim. See also Foxworth, 402 F. Supp. at 534 (automatic disqualification does not show pretext unless it is shown that all others with similar backgrounds were not subject to automatic disqualification.) If the error was made by recruiters, Defendant was justified in relying upon their work product. See Fuentes, 32 F.3d at 765 ("pretext is not shown by evidence that 'the employer's decision was wrong or mistaken' since the factual dispute at issue is whether discriminatory animus motivated the employer.") Plaintiffs have provided no evidence supporting a *prima facie* claim based on "an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." Teamsters v. U.S., 431 U.S. 324, 358 (1977).

Counsel for Anderson argued, at the October 29, 2008, hearing that the discrepancy between what Defendant's recruiters claim, that Anderson would not work for less than $49,000, and Anderson's assertion that she never spoke with the recruiters created a factual

dispute making summary judgment inappropriate.[10]  Anderson's assertion that she did not speak

with the recruiters is not sufficient to warrant a jury trial.  The 1963 Advisory Committee Notes

to Federal Rule of Civil Procedure 56 provide that:

> A typical case is as follows: A party supports his motion for
> summary judgment by affidavits or other evidentiary matter
> sufficient to show that there is no genuine issue as to a material
> fact. The adverse party, in opposing the motion, does not produce
> any evidentiary matter, or produces some but not enough to
> establish that there is a genuine issue for trial. Instead, the adverse
> party rests on averments of his pleadings which on their face
> present an issue. In this situation Third Circuit cases have taken the
> view that summary judgment must be denied, at least if the
> averments are "well-pleaded," and not supposititious, conclusory,
> or ultimate. …
>
> The very mission of the summary judgment procedure is to
> pierce the pleadings and to assess the proof in order to see whether
> there is a genuine need for trial. The Third Circuit doctrine, which
> permits the pleadings themselves to stand in the way of granting an
> otherwise justified summary judgment, is incompatible with the
> basic purpose of the rule.

FED. R. CIV. P. 56 ADVISORY COMMITTEE NOTES (1963 Amendment).

Plaintiffs may not simply rely upon their claim that Anderson disputes whether or

not she spoke with Defendant's recruiters about her salary demands.  Such assertions do not

"pierce the pleadings" showing sufficient evidence warranting a denial of summary judgment.

Defendants have provided depositions, affidavits and business records supporting their assertion

that Anderson would not work for less than $49,000.  Anderson in her deposition admitted that

---

10.  At the October 29, 2008, hearing, Plaintiffs' Counsel suggested that the existence of factual disputes was
sufficient to defeat summary judgment.  This is not the appropriate standard.  In an indirect evidence ADEA case,
Plaintiff must meet the test articulated in McDonnell Douglas and its progeny.  This burden is not met by the mere
presence of factual disputes.  The appropriate standard requires articulating a *prima facie* case of age discrimination
while sustaining the burden of proof and showing that any and all of Defendant's legitimate non-discriminatory
reasons for the employment decision were pretextual, and that discrimination was the real reason.

she may have erroneously noted in Career Center that she would not work for less than her current salary of $49,000. Plaintiffs, unlike Defendant, have provided no affidavits in support of Anderson's contention. Plaintiffs rely solely on their averments, as well as Anderson's deposition testimony and a March 25, 2003, email. This evidence is insufficient to create a genuine issue of fact sufficient for trial. The email is of limited utility as it references only Anderson's willingness to accept a specific position for a salary below $49,000. It neither references the timely applications being examined by this Court, nor shows that Anderson was willing to consider other positions below this level. Even so, assuming Plaintiffs' are correct in asserting that Anderson never spoke with either recruiter, Plaintiffs still fail to sustain their burden of proving discrimination under the ADEA.

Even if there is a factual dispute regarding whether or not Ms. Anderson told recruiters that she would not work for less than $49,000, Defendant was justified in relying on the recruiter's notes showing this threshold salary level. Fuentes, 32 F. 3d at 765 ("pretext is not shown by evidence that 'the employer's decision was wrong or mistaken' since the factual dispute at issue is whether discriminatory animus motivated the employer.")

Finally, assuming *arguendo* that Plaintiffs articulated a *prima facie* case of discrimination, they have not shown that Defendant's reason for not selecting Anderson, *i.e.* that her salary demands were too high, was pretext. In essence, no evidence has been provided suggesting that Defendant's stated reason was untrue or that discrimination was more likely than not the actual reason for the hiring decision. Absent such evidence, summary judgment is warranted.

c.   **Plaintiff Simpson's Timely Complaints Fail to State a *Prima Facie* Case or Offer Evidence of Pretext**

i.   **Positions 30395 and 30315**

Simpson posted for position 30395 on January 30, 2004, and was notified of his non-selection on April 6, 2004. (Pls.' Resp. Br. 35-36)  Simpson posted for position 30315 on February 2, 2004, and was notified of his non-selection on February 12, 2004. (Id. at 36.) Defendant claims that Simpson's self-reported salary requirements exceeded the pay band for both positions. (Kenst Dep. 92:7-23; Ivy Decl. ¶ 44, 45; Kenst Decl. ¶¶ 15-17.)  Simpson contests Defendant's assertions, stating that he was never asked about his required salary level, and claiming that he previously indicated that his salary was "negotiable."[11]  (Pls.' Resp. Br. 35-36.)

As noted above, reliance on averments made in briefs submitted to the Court is not sufficient to rebut a motion for summary judgment; more specific evidence is required.  That said, assuming Simpson was never asked about his salary requirement *and* that his salary level was negotiable, Plaintiffs have still failed to articulate a *prima facie* case, as they have not shown that Defendant's reason for not selecting him – *i.e.* their understanding that his salary demands were too high – was pretext.  See Bilotti v. Franklin Mint, Civ. A. No. 80-2917, 1981 WL 338, *5 (E.D. Pa. Nov. 21, 1981) (plaintiff may not establish as *prima facie* case of discrimination because he required a higher salary than the one offered.); see Foxworth, 402 F. Supp. 534 (automatic disqualification does not show pretext unless it is shown that all others with similar backgrounds were not subject to automatic disqualification.)  Plaintiffs have provided no

---

11.  Plaintiffs state that notes from a prior position, 20863, which is not under consideration, indicated that Plaintiff's salary was "negotiable."

25

evidence suggesting that salary was pretext or that Defendant was unjustified in relying upon the written notes of its employees.

Plaintiffs have provided no evidence sufficient to conclude the Defendant's stated reason was untrue or that discrimination was more likely than not the actual reason for the hiring decision. Accordingly, summary judgment dismissal of these claims is warranted.

### ii.    Position 31899

Simpson posted for position 31899 on March 8, 2004. (Pls.' Resp. Br. 36-37.) Defendant claims that efforts to contact Simpson were unsuccessful because his phone was disconnected, and he did not reply to three emails sent him. (Ivy Decl. ¶ 43; Kenst Decl. ¶¶ 10-12.) Simpson challenges these claims stating that his phone was never disconnected and noting that Defendant has failed to produce copies of any emails allegedly sent to him. (Pls.' Resp. Br. 36-37.)

At no point do Plaintiffs allege that age played any role in the decision to reject Simpson for position 31899. Simpson, again, fails to articulate a *prima facie* case of discrimination or provide evidence other than averments made in court filings to support a claim of discrimination.

Assuming that Simpson made such a case, his claim must fail due to his failure to rebut Defendant's legitimate reason for his not being hired — chiefly that the recruiter was unable to contact him. Simpson has not shown that Defendant's proffered non-discriminatory reasons were "either a post hoc fabrication or otherwise did not actually motivate the employment action." Fuentes, 32 F.3d at 764 (internal quotes omitted.) Absent evidence

creating an inference that the employment decision was based on an "illegal discriminatory criterion," summary judgment is warranted.  Teamsters v. U.S., 431 U.S. at 358 (1977).

### iii.    **Position 20863**

Simpson posted for position 20863 on October 7, 2003, and was notified of his non-selection on February 2, 2004.  (Pls.' Resp. Br. 32.)  Simpson was phone screened, but never formally interviewed.  (Id.; Simpson Dep. 176:10-177:19.)  Defendant asserts that the individual hired was better qualified, as she possessed excellent communication and managerial skills. (Hand Decl. ¶ 8.)  Steven Hand, District Manager for Defendant, stated that the chosen candidate "was the best candidate.  Ms. Platt was a graduate of the Widener University Hospitality program which is, in my view, the premier program in our industry.  Ms. Platt worked for me in another account and demonstrated that she was very hard-working and extremely bright and a quick study."  Id.  Defendant also claims that the hiring decision was influenced by the client who was pleased with Platt's work.  (Hand Dep. 46:2-16.)

Plaintiffs dispute that Platt was more qualified given that Simpson possessed a degree from the Culinary Institute of America, he had more managerial experience than did Platt, and had worked with Mr. Hand, the hiring manager, for a longer period than Platt.  (Pls.' Resp. Br. 61-62.)  To avoid summary judgment, however, a plaintiff's evidence "rebutting the employer's proffered evidence rebutting the employer's proffered legitimate reasons must allow a factfinder to reasonably infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." Fuentes, 32 F.3d at 764 (internal quotes omitted.)  Plaintiffs challenge Defendant's stated reasons

for selecting Platt, but do not dispute the underlying facts or provide evidence that Defendant's stated reasons were pretextual. Instead, they simply challenge Platt's credentials. As discussed previously, self-assessment of one's abilities is insufficient to show pretext. See <u>Dunleavy v. Mount Olive Twp.</u>, 183 Fed. Appx. 157 (3d Cir. 2006) (Plaintiff failed to show pretext when he relied on his own argument that he was qualified); <u>Embrico v. U.S. Steel Corp.</u>, 404 F. Supp. 2d 802, 826 (E.D. Pa. 2005) (Plaintiff's assessment of his ability is not reasonable to an examination of pretext.). Plaintiffs have failed to provide any evidence that could lead one to conclude that Defendant's stated reasons for hiring Ms. Platt were untrue or that discrimination was more likely than not the actual reason for the hiring decision.

### B.  <u>Plaintiff's Untimely Claims</u>

Of Plaintiff's fifty-seven claims, fifteen are untimely. The ADEA provides that:

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed-- (1) within 180 days after the alleged unlawful practice occurred; or (2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C.A. § 626(d)(1),(2).

Section 633(b) applies to "referral states," which are those states that have "a law prohibiting discrimination in employment because of age" and have created "a state authority to grant or seek relief from such discriminatory practice." 29 U.S.C. § 633(b). See 43 P.S. §955, *et seq*. Pennsylvania is a referral state, and charges of unlawful discrimination must be filed within

28

"300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier." 29 U.S.C. § 626(c)(2).  See 29 C.F.R. § 1626.7 (providing how the date of filing with the EEOC is determined); Ruehl v. Viacom, Inc., 500 F.3d 375 (3d Cir. 2007) (dismissing ADEA claimed filed outside the 300 day notification period provided by 29 U.S.C. § 626(c)(2)) (citing Seredinski v. Clifton Precision Prods. Co., 776 F.2d 56, 63 (3d Cir. 1985).

Duffy requested that the EEOC take action on August 13, 2004.  Anderson and Simpson asked the EEOC to take action on September 10, 2004.  (Pls.' Resp. Br. 37, 40; Duffy Dep. 23:21-26:6; Anderson Dep. 28-32:22; Simpson Dep. 36:10-37:10.)  Given the 300 day statute of limitations, any alleged unlawful practices raised by Duffy prior to October 17, 2003, or by Simpson and Anderson before November 14, 2003, are time barred.[12]

Plaintiffs argue that their untimely claims are (1) evidence of a pattern and practice of age discrimination, and (2) circumstantial evidence sufficient to support a mixed motive claim.  Plaintiffs further cite as circumstantial evidence: (1) the July 2002 issue of "Best of" provided to shareholders of Sodhexo Alliance, and (2) the preferential treatment allegedly given younger managers.  (Pls.' Resp. Br. at 10, 45-46.)

## 1.    **Pattern and Practice Claims**

Plaintiffs seek to present their fifteen untimely complaints "as evidence of a pattern and practice against Plaintiffs because of their age" arguing that it is "well established that a plaintiff can establish that an impermissible factor was a motivating or determinative factor in an

---

12.   Positions 8858, 12122, 11540, 11465, 15443, 10576, 18063, 19089, 21932, 22137,16351, 12563, 13932, 18141, and 2794.

adverse employment decision by showing 'that the employer has previously discriminated against her.'" (Pls.' Resp. Br. 41 (quoting <u>Simpson v. Kay Jewelers</u>, 142 F.3d at 645 (3d. Cir. 1998)). Plaintiffs have not demonstrated that Defendant previously discriminated against them or any other similarly situated individuals.[13]

Submission of fifteen untimely claims as evidence of a pattern and practice of ADEA discrimination is without basis. This Court analyzed Plaintiff's thirteen timely complaints, and found that none withstand summary judgment review. Fifteen untimely claims will not salvage Plaintiff's timely claims as they cannot show the existence of a genuine issues of material fact regarding those thirteen timely claims.

Further, Plaintiffs, having been denied class certification, may not allege a pattern and practice of discriminatory behavior. The Supreme Court in <u>Gen. Tel. Co. of Southwest v. Falcon</u>, noted that "there is a wide gap between an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and the existence of a class of persons who have suffered the same injury." 457 U.S. 147, 157 (1982). The Court noted that in discrimination suits under Title VII, "the inquiry regarding an individual's claim is the reason for a particular employment decision, while at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking." <u>Cooper v. Fed. Res. Bank of</u>

---

13. In <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), the Supreme Court denied Plaintiff's efforts to bring in discriminatory acts, outside the EEOC's 300 day statute of limitation holding that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" <u>Id.</u> at 114. Prior discriminatory actions were deemed untimely and thus unactionable. <u>Id.</u>

Richmond, 467 U.S. 867, 876 (1984) (quoting Teamsters v. U. S., 431 U.S. 324, 360 n. 46 (1977)).

To establish a pattern or practice of disparate treatment, "the employee must show that the defendant regularly and purposefully treated members of a protected group less favorably and intentional discrimination was the employer's standard operating procedure; the employee can prove this through a combination of statistics and anecdotes." C.J.S. CIVIL RIGHTS § 238. While this Circuit has not addressed this issue, every other circuit examining this issue has found that "pattern and practice" claims are limited to class actions suits.[14]  This Court denied Plaintiff's motion seeking class certification.  Given the denial of class certification, Plaintiffs are left with thirteen discrete claims of ADEA violations and no evidence showing a pattern and practice of discrimination.

Assuming that Plaintiffs could introduce their fifteen untimely claims, their claims still fail as they do not provide sufficient evidence supporting a pattern and practice claim. Plaintiffs have provided no evidence showing that they were victims of prior discrimination. They provide no evidence that employees protected by the ADEA were treated differently or that age discrimination was part of a Defendant's hiring policy.  They cite no statistics supporting their claims.  Their primary anecdotal evidence does not show that age discrimination was regular,

---

14.  See, e.g., Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 761 (4th Cir. 1998)(preventing individual plaintiffs from pursuing "a pattern or practice cause of action.") Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 355-56 & n.4 (5th Cir. 2001)(noting that "the typical pattern or practice discrimination case is brought either by the government or as a class action to establish that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers.") (internal quotes omitted); Babrocky v. Jewel Food Co.,773 F.2d 857, 866 n.6 (7th Cir. 1985)(stating that pattern and practice claims "by their very nature, involve claims of classwide discrimination."); Bacon v. Honda of Am. Mfg., Inc., 370 F.3d 565 (6th Cir. 2004) (pattern and practice claim not available to individual claimants seeking to show discrimination under Title VII.).

purposeful, or Defendant's standard policy.  In short, there is no basis for Plaintiffs' claims alleging a pattern and practice of discrimination.

### 2. <u>Mixed Motive Claims</u>

#### a. **Elements of a Mixed Motive Claims**

A mixed motive employment discrimination case arises when both legitimate and illegitimate factors are used to make an employment decision. <u>Price Waterhouse v. Hopkins</u>, 480 U.S. 228, 232 (1989).  In <u>Price Waterhouse</u>, the Court found that, while Title VII prohibits an employer from taking a protected characteristic into account, an employer could avoid liability under the statute by demonstrating that it would have made the same employment decision even if it had not taken into account the protected characteristic. <u>Id.</u> at 242.  In response to <u>Price Waterhouse</u>, Congress passed the Civil Rights Act of 1991, which provided that:  "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m); <u>see</u> <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244, 250 (1994).

The intent of this statutory revision was "to eliminate the employer's ability to escape liability in Title VII mixed-motive cases by proving that it would have made the same decision in the absence of discriminatory motivation."  <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 284 (4th Cir. 2004) (en banc).  The statutory revisions do not absolve employers who discriminate in hiring, but rather limit the remedies available when a defendant

shows that they "would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e-5(g)(2)(B).[15]

Prior to these statutory revisions, <u>Price Waterhouse</u> provided that mixed motive claims required direct evidence. 490 U.S. at 244-46. As a result, courts did not consider whether plaintiffs alleging a mixed motive claim could use the <u>McDonnell Douglas</u> burden shifting approach. <u>See</u> <u>Wright v. Murray Guard, Inc.</u>, 455 F.3d 702, 713 n.4 (6th Cir. 2006) ("Our pre-<u>Desert Palace</u> view that direct evidence was required to establish a mixed-motive case, kept mixed-motive claims distinct from claims analyzed under the <u>McDonnell Douglas</u> framework, which was applied when the plaintiff relied on circumstantial evidence.")

In <u>Desert Palace</u>, the Supreme Court addressed the type of evidence permissible in a mixed motive case, holding that direct evidence was not required to receive a mixed motive jury instruction. <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 98 (2003). The Court found that a plain reading of 42 U.S.C. § 2000e-2(m) required that a plaintiff only demonstrate an employer's use of an improper employment consideration and that a "heightened showing through direct evidence was unnecessary." <u>Id.</u> Thus, the appropriate evidentiary burden requires that "plaintiff prove his case by a preponderance of the evidence using direct or circumstantial evidence." <u>Id.</u> at 99 (citing <u>Postal Serv. Bd. Of Governors v. Aikens</u>, 460 U.S. 711, 714 n.3 (1983).

---

15. 42 U.S.C. § 2000e-5(g)(2)(B) provides:
   On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--
   (I) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and
   (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

To date, the Third Circuit has been reluctant to apply Desert Palace to summary judgment review of mixed motive claims.  In Glanzman v. Metro. Mgmt. Corp., the Third Circuit refused to apply Desert Palace to a mixed motive ADEA case because the Civil Rights Act of 1991, which was the focus of Desert Palace, does not apply to the ADEA.  Glanzman v. Metro. Mgmt. Corp., 391 F.3d at 512 n.3.  See Houser v. Carpenter Tech. Corp., Civ. A. No. 04-0237, 2005 WL 2212364 at *3 (E.D. Pa. Sept. 12, 2005) (noting that the Third Circuit has not applied Desert Palace to ADEA claims.).[16]  More recently, the Third Circuit refused to decide what standard should be used for summary judgment review of a mixed motive claim as plaintiff failed to provide evidence that would lead the court "to conclude that age played any role in his termination."  Houser v. Carpenter Technology Corp., 216 Fed. Appx. 263, 265 (3d Cir. 2007).

### b.    Application of Law to Plaintiffs' Mixed Motive Claims

Plaintiffs assert a mixed motive claim of discrimination and cite Desert Palace, *supra* to support the proposition that "a plaintiff need not produce direct evidence of discrimination," but rather "may establish discriminatory animus through circumstantial evidence."  (Pls.' Resp. Br. 42.)  Acknowledging that the Third Circuit has not addressed "what

---

16.   In a recent decision, the Sixth Circuit noted that since Desert Palace "federal courts of appeals have, without much, if any, consideration of the issue, developed widely differing approaches to the question of how to analyze summary judgment challenges in Title VII mixed-motive cases."  White v. Baxter Healthcare Corp., 533 F.3d 381, 398 (6th Cir. 2008).  The court in White noted that some Circuits have "explicitly held that the McDonnell Douglas/Burdine burden-shifting framework applies to summary judgment analysis of mixed motive claims after Desert Palace."  White, 533 F.3d at 398.  This approach is taken by the Eighth and Eleventh Circuits.  Other circuits utilize a modified McDonnell Douglas approach "under which a plaintiff in a mixed-motive case can rebut the defendant's legitimate non-discriminatory reason not only through evidence of pretext but also with evidence that the defendant's proffered reason is only one of the reasons for its conduct."  Id.  This is the Fifth Circuit's approach.  The Fourth and Ninth Circuits occupy a "middle ground between these approaches permitting "a mixed-motive plaintiff to avoid a defendant's motion for summary judgment by proceeding either under the 'pretext framework' of the traditional McDonnell Douglas/Burdine analysis or by 'presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the adverse employment decision.'"  Id.  The First, Tenth, Sixth and Third Circuits have not adopted any view as to the correct approach.  Id. at 399.

34

type of circumstantial evidence will satisfy the <u>Desert Palace</u> standard," Plaintiffs urge this Court to follow the lead of federal courts in Minnesota[17] and Iowa[18] in finding that "evidence that the plaintiff was treated differently than similarly situated employees who are not in the protected class is sufficient indirect evidence to sustain a mixed motive claim under <u>Desert Palace</u>." (<u>Id.</u>) Plaintiffs' reliance upon these cases and <u>Desert Palace</u> is in error.[19]

  Plaintiffs' argument fails, as courts in the Eastern District have refused to apply <u>Desert Palace</u> when deciding ADEA summary judgment motions. In <u>Glanzman v. Metro. Mgmt. Corp.</u>, the Third Circuit refused to apply <u>Desert Palace</u> to a mixed motive ADEA case because the Civil Rights Act of 1991, which was the focus of <u>Desert Palace</u>, does not apply to the ADEA. <u>Glanzman v. Metro. Mgmt. Corp.</u>, 391 F.3d 506, 512 n.3. <u>See</u> <u>Houser</u>, 2005 WL 2212364 at *3 (noting that the Third Circuit has not applied <u>Desert Palace</u> to ADEA claims); <u>Ryan v. CBS Corp.</u>, Civ. No. 06-2385, 2007 WL 2317380 (E.D. Pa. 2007) (refusing to apply <u>Desert Palace</u> to a suit brought under the ADEA).

  Second, Plaintiffs argument is muddled by confusion regarding the sufficiency and quantum of evidence needed to prove a mixed motive claim. Plaintiffs correctly assert that <u>Desert Palace</u>, and the 1991 Civil Rights Act, allow for the use of circumstantial evidence in mixed motive claims. Circumstantial evidence may be used, but it must show "by a preponderance of

---

17.  <u>Brown v. Westaff</u>, 301 F. Supp. 2d 1011 (D. Minn. 2004) (holding that <u>Desert Palace</u> modified the <u>McDonnell Douglas</u> burden shifting approach.).

18.  <u>Dunbar v. Pepsi-Cola General Bottlers of Iowa, Inc.</u>, 285 F. Supp. 2d 1180 (N.D. Iowa 2003) (modifying the <u>McDonnell Douglas</u> burden shifting approach in light of <u>Desert Palace</u>.).

19.   The Eighth Circuit holds that <u>Desert Palace</u> has "no impact on prior Eighth Circuit summary judgment decisions" and the <u>McDonnell Douglas</u> framework still applies when addressing workplace discrimination claims under Title VII. <u>Griffith v. City of Des Moines</u>, 387 F.3d 733, 736 (8th Cir. 2004).

the evidence" that an improper employment criteria, such as age, "was a motivating factor." Desert Palace, 539 U.S. at 99. Thus, in mixed motives claims the evidentiary burden remains the "conventional rule of civil litigation" and requires evidence sufficient to prove by a "preponderance of the evidence" that an improper employment criteria "was a motivating factor." Desert Palace, 539 U.S. at 100; see also 42 U.S.C. § 2000e-2(m); see, e.g., Walden v. Georgia-Pacific Corp., 126 F.3d 506, 513 (3d Cir. 1997) (noting that circumstantial evidence can support a Price Waterhouse claim if it directly reflects the allegedly unlawful basis for the challenged employment decision).

Plaintiffs' "circumstantial" evidence is little more than assertion, as it fails to meet the required evidentiary burden. Instead, their mixed motive claim consists of indirect evidence that seeks to establish an inference of discrimination. Such evidence is properly addressed under the McDonnell Douglas burden shifting approach requiring a "preponderance of the evidence" that an improper employment criteria "was a motivating factor." Desert Palace, 539 U.S. at 100

### a.   July 2002 "Best of" Magazine

Plaintiffs claim that it is "uncontroverted that 'Best of' [magazine] was widely distributed in the geographic area in which Plaintiffs were seeking positions" and that the strategy objectives expressed within the July 2002 "Best of" were the "policy statements of the top company executives." (Pls.' Resp. Br. 45.) Plaintiffs' claim that this evidence "must be considered as circumstantial evidence of animus based on age." (Id.)

36

Plaintiffs acknowledge that they have no direct evidence showing discrimination. (Pls.' Resp. Br. 43.)  Instead, they cite the July 2002 issue of "Best of" as circumstantial evidence. Circumstantial evidence requires more than mere assertion.  Yet, that is all Plaintiffs provide.

To support their claim that Sodexho Alliance's strategic objective was incorporated by Defendant, Plaintiffs note that the publication was widely distributed to all Defendant's employees, featured photographs of the Defendant's then CEO and another top executive, and listed several other top executives of the Defendant as contributors. (Court Order, Duffy v. Sodexho, Inc., Civ. A. No. 05-05428, Oct. 23, 2008; Duffy Dep. 242-246.)  As this Court previously stated:

> despite the existence of Sodexho Alliance's publication, the Court views the link—that the Defendant therefore systematically discriminated against older workers—as mere speculation. As the Defendant points out, Plaintiffs provide no evidence indicating that the Defendant adopted and/or implemented the strategic objective of their parent company. Absent additional evidence, the Court is unwilling to jump to the conclusion that the Defendant may have implemented an age based discrimination.

Id.

Regarding the July 2002 "Best of," there is no evidence that the author of the article in question had any decision making authority regarding the hiring of Plaintiffs.  Defendant is an independent subsidiary of Sodhexo Alliance, and issues of "Best of" are published by the corporate parent.  There is no evidence that anyone with decision making authority either wrote the article in question or possessed authority capable of influencing hiring decisions made by Defendant.

37

Extensive discovery has shown that those who did possess decision making authority had not read the article. (Bridger Decl. ¶ 4.) Plaintiffs have failed to show that the July 2002 "Best of" constitutes evidence sufficient to support a *prima facie* case of discrimination.

**b.** **Treatment of Younger Managers**

Plaintiffs cite, as circumstantial evidence, their claim that Defendant provided favorable treatment to younger managers, Christi Mancini, Brian Robinson and Susan D'Ignazio, by providing them positions without requiring that the apply through Career Center. (Pls.' Resp. Br. 45-46; Def.'s Reply Br. 32.) Defendant asserts that Plaintiffs' claims are unfounded. (Def.'s Reply Br. 32.)

Plaintiffs allege that Mancini "was placed at a position with TV Guide without posting for it." (Pls.' Resp. Br. 46.)[20] Contrary to Plaintiffs' assertion, Mancini posted for the TV Guide position, submitting her resume on January 10, 2003. (Def.'s Reply Br. 29 Ex. B: Ivy Suppl. Decl. ¶¶ 7 8, Ex. 2.) An offer was extended to her on July 25, 2003. (Id. at ¶ 8.)

Plaintiffs claim that Robinson "was placed at the Vanguard, Cedar Hollow facility without posting." (Pls.' Resp. Br. 46.) It is unclear if Plaintiffs are asserting that Robinson was given a permanent or temporary position at Vanguard. The former could be seen as evidence of pretext, but the latter simply shows that Mr. Robinson was treated similarly to Plaintiffs Duffy and Simpson, as all three men were assigned to a variety of temporary positions after the Radnor account was closed. Plaintiffs provide no evidence showing that Robinson was given a permanent position at Vanguard.

---

20. Plaintiffs cite to several pages of the Duffy Deposition, but those pages do not address Ms. Mancini.

In fact, the record indicates that Mr. Robinson was never given a permanent position at Vanguard. His pay history shows that he was paid from the Wyeth account until his transfer to Discover. (Def.'s Reply Br., Ex. C.) Duffy acknowledges that both Robinson and himself worked temporarily at Vanguard. (Duffy Dep. 52:4-16, 188:7-24, 189:1-14.) Neither Robinson nor Plaintiff Duffy posted for their positions at Vanguard, as Defendant's policies do not require postings on Career Center when jobs are for less than six months. (Def.'s Reply Br. 33, Ex. D; Bridger Dep. 133:13-17.).

Regarding D'Ignazio, Plaintiffs assert that she was "offered the General Manager 3 position at Bristol Meyers Squibb without first posting for it." (Pls.' Resp. Br. 46.) Plaintiffs' assertion is undermined by Duffy's deposition statement that the hiring manger asked Ms. D'Ignazio "if she would be interested in posting for the job." (Duffy Dep. 233:1-15.) It is worth noting that D'Ignazio was not selected for this position, and that this Court has already determined that Defendant offered a legitimate non-discriminatory reason as to why O'Brien was offered the position.

Defendant also notes that Plaintiffs, when discussing the treatment of their fellow managers, do not mention Ms. Young who, at age sixty-five, was the oldest manager at the Radnor facility. (Def.'s Reply Br. 33.) Young was offered at permanent position at Sodexho's Wilmington Trust account where she is still employed. (Id.; Ivy Suppl. Decl. ¶ 12.)

Plaintiffs assertions regarding managers Mancini, Robinson, and D'Ignazio are demonstrably inaccurate. Baseless accusations, masquerading as evidence, are insufficient to support a *prima facie* claim of discrimination.

## V.  MOTION TO SUBSTITUTE

On October 30, 2008, Plaintiff filed a Motion to Substitute Party given that Plaintiff, Mr. Richard Simpson died on May 19, 2008.  (Pls.' Mot. to Subs. 1.)  Simpson's will and testament were admitted to probate in Gloucester County, New Jersey, and his daughter, Sandra E. Mirzejewski, was appointed Executrix of the Estate.  (Id.)  Federal Rule of Civil Procedure 25(a) provides for filing of motions to substitute in such a case.  FED. R. CIV. P. 25(a).  Accordingly, Plaintiff's Motion to Substitute is Granted.

## VI.  CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is granted.  The parties agree that there are only thirteen claims before this court, and these thirteen positions: 37816, 21448, 29870, 42474, 11612, 20863, 30395, 30315, 31899, 52375, 36878, 47116, 48015, and 49634 do not withstand summary judgment review under the McDonnell Douglas burden shifting framework.  Plaintiffs may not salvage these claims by asserting either a pattern and practice of discrimination or by means of a mixed motive claim.  Accordingly, Defendant's motion is granted.

Likewise, Plaintiff's Motion to Substitute is granted.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL F. DUFFY, et al.,         :      CIVIL ACTION

       Plaintiffs,         :      NO.  05-5428

                   :

       v.             :

                   :

SODEXHO, INC.,          :

       Defendant.        :

## ORDER

**AND NOW**, this 14th day of November, 2008, upon consideration of the Motion for Summary Judgment of Defendant Sodexho, Inc. (Docket No. 21), Plaintiffs' Response (Docket No. 27) and Defendant's Reply (Docket No. 29), as well as Plaintiffs' Motion to Substitute Party (Docket No. 33), it is hereby **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion to Substitute is **GRANTED**.

**JUDGMENT** is entered in favor of Defendant Sodexho, Inc., and against Plaintiffs Michael F. Duffy, Diane Anderson and Richard Simpson.

This case is **CLOSED**.

BY THE COURT:

_____

RONALD L. BUCKWALTER, S. J.